CASE 104—ACTION BY C. S. HILL, EXR. OF THE ESTATE OF ROSA
JOHNSON, DECEASED, AGAINST T. S. MAYES, GUARDIAN AND OTH-
ERS.—MARCH 16.

# Hill v. Mayes.

### APPEAL FROM MARION CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. AFFIRMED.

DESCENT—HEIRS—LIABILITY FOR DEBTS—SETTLEMENT OF ESTATE—
CLAIMANTS—NONPARTICIPATION—CONTRIBUTION BY CREDITORS.

Held: 1. Where the amount paid to certain children from the
estate of their deceased father was received by them as cred-
itors of their father's estate, and not as heirs, they were not
bound by the father's knowledge of a claim against him which
was not presented as a claim against his estate, in a suit to com-
pel such children to refund for the benefit of such creditor.
2. Civ. Code Prac. sections 428, 430, provide for the bringing of
actions to settle decedent's estates, in which all creditors known
are directed to be made parties on notice by advertisement, etc.
Section 433 provides that creditors failing to appear shall have
no claim against an administrator who has administered and
distributed the estate, and section 434 provides that legatees and
distributees shall be liable to a non-appearing creditor to the
extent of the estate received by them, etc. HELD, that where
a creditor failed to file her claim against a decedent's estate,
though she had no actual notice of an action to settle the
same, in which judgment was rendered, and the entire estate
distributed to participating creditors, she could not thereafter
compel contribution from such creditors.

H. W. RIVES, ATTORNEY FOR APPELLANT.

1. Appellant's testate had a specific contract on the tract of
land, and though the record does not show the assignment of
the lien note to her, the maker of the note and owner of the
land, T. J. West, knew that she held it, so that neither West
nor any representative of his, nor any one claiming under him,
could in any legal proceeding of which Mrs. Johnson had no
notice, deprive her of this contract right and lien thereon.

2. This case resolves itself into this position: Whether these infants through their guardian can assert their statutory preference against the proceeds of land on which they know that a paramount contract lien exists; which lien they have stipulated shall be transferred from the land itself to the pro-ceeds, and then hold these proceeds against the rightful claim-ant, when the fact of that claimant not having asserted his claim was the result of their failure to inform the court of the existence of the claim.

### AUTHORITIES CITED.

24 A. & E. Ency. of Law, pp. 734, 747; Freeman on Judg-ments, sec. 162; Stull v. Davidson, 12 Bush, 167; Hood's Admr. v. Hood's Devisees, 80 Ky., 39; Bitzer v. Mercke, 23 R., 670.

JOHN W. LEWIS AND T. S. MAYES, FOR APPELLEES.

1. We submit that there is no allegation in appellant's pleading to authorize the recovery of any specific amount from appellee. It is nowhere alleged that the land sold in the suit to settle the estate of T. J. West, on which appellant now claims a lien, was sufficient to pay the demand of appellant, nor is it plead that appellee's wards ever received one cent from the proceeds of this particular tract of land, nor is it any where shown what this particular tract of land sold for, nor can this court so adjudge.

2. Section 498, Kentucky Statutes, provides the only manner by which liens recited in recorded deeds or mortgages can be assigned to the assignee of the lien note, so as to affect the rights of a purchaser for a valuable consideration; this was not done, and no notice of the assignment ever given to the purchaser; and a judgment of the circuit court finally adjudg-ing the rights of Adeline Mackin, the lien holder of record, is a full protection to the purchaser for a valuable consideration. Civil Code, secs. 428, 430, 434, 436; Kentucky Statutes, secs. 498, 3870; A. & E. Ency. of Law, vol. 2, p. 129; Bitzer v. Mercke, 23 R., 670; Paine v. Johnson, 95 Ky., 175; 80 Ky., p. 39, 11 and 12 Bush, pp. 11, 167.

OPINION OF THE COURT BY JUDGE NUNN—AFFIRMING.

T. J. West died in Marion county, Ky., in the year 1895, and left a small amount of personal property and three tracts of land. On one of the tracts there was a lien in favor

of one Bricken, who had died, upon whose estate J. M. Knott had administered. One of the tracts was purchased by T. J. West of Adeline Mackin for the price of $700, for which he executed two notes; one for $300, the other for $400. This last note Mrs. Mackin, prior to 1895, sold and assigned to one Rosetta Johnson, testate of appellant herein. Mrs. Mackin, when she transferred this note to Rosetta Johnson, failed to note this fact on the margin of the deedbook as required by section 498a of the Kentucky Statutes of 1903. The record stood as showing that she was still the holder of the lien notes. One Robert Parrott qualified as the administrator of T. J. West, and on December 30, 1895, he instituted an action by virtue of section 428 of the Civil Code of Practice to settle decedent's estate. He made as defendants the children of decedent West, and the creditors, Adeline Mackin, J. M. Knott and J. M. Bricken, administrators of Alex. Bricken, Martin Horan and Catherine Horan.

He alleged in his petition that these were all the creditors of the decedent known to him. He also alleged that the decedent was the statutory guardian of his children, and as such was indebted to them, as shown by his last settlement, which settlement was made part of his petition, in the sum of $973, with interest from the year 1890. It also appears that J. M. Knott some time in the month of February, 1896, was appointed by the county court as guardian for the children of the decedent, West, who were made defendants in the action. But before he was summoned and made a party to the action as guardian, and on the 21st of February, 1896, the court rendered a judgment for the sale of the three tracts of land mentioned. The court first directed the commissioner to offer the three tracts separately and then as a whole, accepting the bid or bids which result in the most

Hill v. Mayes.

money to the estate, and closed the judgment with these words: "All valid claims and liens against the land or either of said tracts shall attach to the proceeds thereof, and said lienholders shall not be prejudiced by the sale of this land as herein offered." The commissioner reported that he offered the three tracts separately. The bid offered for one was $322, another $162, and the other or the Mackin land $126. He then offered the whole, and John Horan bid the sum of $1,800, which bid was accepted, and the court confirmed this report. Horan paid all the purchase price, and the deed was made to him. The court, by an order made at its February term, by virtue of section 430 of the Civil Code of Practice, referred the action to the master commissioner to advertise, take proof, and report all claims against the estate. At the next term of the court he made his report, in which he reported a claim due Mrs. Mackin for something over $200, and reported it as a preferred claim on the land sold by her to West; and reported the claim due the Bricken estate of $150 as a preferred lien on one of the other tracts; and reported that the children of West had a preferred claim against their father's estate of $1,242; that this money had been expended by their father in purchasing the two tracts of land other than the Mackin survey. He reported that he had advertised for claims as required by section 430 of the Civil Code of Practice and the order of court, and no claims were filed which were preferred claims other than those mentioned; that five or six persons holding general claims amounting in all to about $200 had proved and filed their claims, which were each set out in his report. This report was confirmed, and the court directed the cost of the action to be paid, and that the claims of Bricken, Mackin, and the children be paid, and the balance of $87 be distri-

Hill v. Mayes.

buted pro rata among the general creditors. This was done and the case stricken from the docket in the year 1897. It appears that Mrs. Rosetta Johnson did not personally know that she had any claim against the estate of West; that J. M. Knott, who was the cashier of a bank, was her agent, and transacted all her business, and actually made this transaction with Mrs. Mackin by which she received this note for $400, and collected the interest for her for one or two years from West. It also appears that neither Parrott, the administrator of West, nor any of the other parties to that action other than Knott and Mrs. Mackin, had any knowledge or information of the existence of this $400 note, or that Mrs. Rosetta Johnson held that claim, or any other claim, against the estate of T. J. West. There is not an intimation in the whole of the proceedings of Parrott to settle that estate that she had any claim against it of any kind or character. In the year 1901, after the death of Rosetta Johnson, her executor, the appellant herein, filed his affidavit, and moved the circuit court that the action of Parrott to settle the estate be reinstated on the docket and for a rule against the guardian, Mayes, the appellee herein, requiring him to refund of the amount that the children had received enough to pay the $400 note, with its interest. Before this motion was heard by the court, appellant dismissed this proceeding without prejudice, and immediately instituted this action. In his petition he made John Horan, the purchaser of the land, and Mrs. Adeline Mackin, defendants. He made all the necessary allegations to enforce the lien on the tract of land sold by Mackin to West. Horan alone answered. He referred to all the proceedings of Parrott to settle the estate of West, and made the same a part of his answer, and pleaded the judgment of the

court therein as a bar to the prosecution of this action against
him, and made his answer a cross-action against the guardian
of the West children, and asked that in the event he be com-
pelled to pay this $400 note to appellant, appellee, the guard-
ian, be compelled to refund that amount to him.    Appel-
lee answered this cross-petition, and also referred to the
Parrott settlement suit, and claimed that the judgments
rendered by the court therein were final judgments, and
that these children received the fund due them by reason
of these judgments of the court, and that they were final,
and could not be collaterally attacked by this action, and
asked that this proceeding be dismissed.  The pleadings were
completed, issues made, proof heard, and the court adjudged
that the petition of the appellant, Hill, and the cross-petition
of Horan, in so far as they affected appellee, be dismissed,
and adjudged appellee his costs against appellant.   The ap-
pellant asked a reversal of this judgment.

The appellant claims that Mrs. Rosetta Johnson is not
bound by the judgment in the Parrott suit, for the reason
that she was not a party thereto.  He also contends, even
admitting that Parrott and all the parties to that action
other than Knott and Mackin had no notice of the existence
of the claim of Rosetta Johnson. yet as it was shown by
the proof that T. J. West in his lifetime, knew Mrs.
Johnson held his note, and as these children and
their guardian claimed through and under him, they
were bound by his knowledge of the assignment to Mrs.
Johnson, even if no one of them had been informed of it
after his death.  This last proposition is true, provided they
had received the sum paid them as heirs, legatees, or de-
visees.   But, as they received it as preferred creditors of
the estate, these principles can not apply to them in this

case. As a general rule, appellant's first proposition is a correct one; that is, no person is bound by a judgment in an action unless he be a party or privy thereto. But the settlements of the estates of deceased persons are governed by special code provisions, which, in our opinion, alter the general rule stated. By section 428 it is required that the representative or other person authorized to bring an action for the settlement of an estate made as defendants the real representatives and all persons having liens upon or interest in the property left by the decedent and the creditors of the decedent, so far as known to the plaintiff. By this action it is presumed that the party bringing the suit may not know all the creditors and persons holding liens upon the property of the decedent. For the purpose of obviating this difficulty, and to give every creditor notice of the action, section 430 was enacted, directing the court to make an order for the creditors of the decedent to appear before a commissioner and prove their claims before a certain day to be named in the order, notice of which should be given by advertisement in a newspaper; or, if none be published in the county, then by such other modes as the court may judge best calculated to give such creditors actual notice of the order; and, in addition to the advertisement in the newspaper, the court may direct publication in other modes. By section 432 it is provided a creditor appearing before a commissioner and presenting his claim becomes thereby a party to the action, and is concluded by the final judgment of the court allowing or rejecting his claim. It is provided in section 433 creditors failing to appear and prove their claims agreeable to such order shall have no claim against the executor or the administrator who has actually paid out the estate in expenses of administration and to creditors, legatees, or distributees. By

section 434 it is provided legatees and distributees shall be liable to a direct action by a creditor to the extent of estate received by each of them, notwithstanding the failure of the creditor to appear, and the discharge of the personal representative as prescribed in the preceding section; and that liability shall continue during the same period that the liability of the personal representative would have continued but for said discharge.

It is apparent from all these code provisions, taken together, that, if an estate of a decedent be settled, and these provisions be substantially complied with, then the judgment of distribution should be final and binding upon all creditors, whether they had actual notice of the pendency of the action or not. And if a creditor did not appear in such an action, and file his claim, or move to set aside, vacate, or modify the judgment of the court as prescribed by section 518 of the Civil Code of Practice, then his claim is lost unless he can recover it against the legatees or distributees as provided by section 434, Id. As to the executor, administrator, and creditors who file their claims, the advertisement in the newspaper, or by such other means or modes as the court may order, must be conclusively presumed to have notified all creditors of the pendency of the action; for it is provided by section 433 of the Civil Code of Practice that creditors failing to appear and prove their claims shall have no claim against the executor or administrator who has actually paid out the estate in expenses of administration and to creditors, legatees, or distributees. The next section expressly limits the right of creditors who file their claims to a recovery from the legatees and distributees of the estate, thereby impliedly relieving the creditors who have by order of the court received the amount of their claims from the contribution to those who may have failed to file claims.

We are of the opinion that, taking all these provisions together, this is a reasonable construction of them; otherwise it never could be known when an estate was settled. Those creditors who had filed their claims would be afraid to receive any sums adjudged to them by order of court for fear that many creditors had failed to present their claims, and that they might thereafter be harassed by a dozen or more suits for contribution. Hence the reason for limiting the right of such creditors to proceed against only the legatees and distributees of the estate.

For these reasons the judgment of the lower court is affirmed.